UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

SCOTT C. [1],                          )
                                       )
                   Plaintiff,          )
                                       )
         v.                            )        No. 2:20-cv-00501-DLP-JRS
                                       )
KILOLO KIJAKAZI,                       )
                                       )
                   Defendant.          )

## <u>ORDER</u>

Plaintiff Scott C. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of his application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d). For the reasons set forth below, this Court hereby **AFFIRMS** the ALJ's decision denying the Plaintiff benefits.

## I.   PROCEDURAL HISTORY

On August 27, 2018, Scott proactively filed his application for Title II DIB benefits. (Dkt. 12-2 at 20, R. 19). Scott alleged disability resulting from blind or low vision, irritable bowel syndrome, tremors, high blood pressure, carpal tunnel, arthritis, depression, restless leg syndrome, high cholesterol, and rheumatoid arthritis. (Dkt. 12-3 at 3, R. 79). The Social Security Administration ("SSA") denied

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

Scott's claim initially on February 15, 2019, (Dkt. 12-3 at 2-12, R. 78-88), and on reconsideration on May 2, 2019. (Id. at 13-26, R. 89-102). On May 21, 2019, Scott filed a written request for a hearing, which was granted. (Dkt. 12-2 at 20, R. 19).

On December 10, 2019, Administrative Law Judge ("ALJ") Stuart T. Janney conducted a hearing, where Scott appeared in person and vocational expert Christine Fontaine appeared telephonically. (Dkt. 12-2 at 44-78, R. 43-77). On January 16, 2020, ALJ Janney issued an unfavorable decision finding that Scott was not disabled. (Dkt. 12-2 at 20-39, R. 19-38). On January 17, 2020, Scott appealed the ALJ's decision. (Dkt. 12-4 at 74-76, R. 175-77). On September 1, 2020, the Appeals Council denied Scott's request for review, making the ALJ's decision final. (Dkt. 12-2 at 2, R. 1). Scott now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.   STANDARD OF REVIEW

To qualify for Title II DIB, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments must be of such severity that he is not able to perform the work he previously engaged in and, based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in

2

the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these

statutory standards by, in part, prescribing a five-step sequential evaluation

process for determining disability. 20 C.F.R. § 404.1520(a). The ALJ must consider

whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a
> severe impairment or combination of impairments; (3) the
> claimant's impairment meets or equals any impairment listed in
> the regulations as being so severe as to preclude substantial
> gainful activity; (4) the claimant's residual functional capacity
> leaves him unable to perform his past relevant work; and
> (5) the claimant is unable to perform any other work existing in
> significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation

omitted). An affirmative answer to each step leads either to the next step or, at

steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 404.1520;

*Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three,

then he must satisfy step four. Once step four is satisfied, the burden shifts to the

SSA to establish that the claimant is capable of performing work in the national

economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R.

§ 404.1520. (A negative answer at any point, other than step three, terminates the

inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's

residual functional capacity ("RFC") by evaluating "all limitations that arise from

medically determinable impairments, even those that are not severe." *Villano v.

Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a

claimant can do despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01

(7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id*. at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform his own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of his age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is

4

not whether Scott is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, he must build an "accurate and logical bridge from the evidence to his conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made, and he must trace the path of his reasoning and connect the evidence to his findings and

conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford,* 227 F.3d at 872.

### III.   BACKGROUND

#### A. Factual Background

Scott was fifty-three years old as of his July 30, 2018 alleged onset date. (Dkt. 12-3 at 2, R. 78). He is a high school graduate who has past relevant work as an operator and road boss in the construction industry. (Dkt. 12-6 at 7-8, R. 211-12).

#### B. ALJ Decision

In determining whether Scott qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) and concluded that Scott was not disabled. (Dkt. 12-2 at 20-39, R. 19-38). At Step One, the ALJ found Scott had not engaged in substantial gainful activity since his alleged onset date of July 30, 2018. (Id. at 22, R. 21).

At Step Two, the ALJ found that Scott suffered from the following severe impairment: bilateral knee degenerative joint space loss. (Dkt. 12-2 at 22, R. 21). The ALJ found Scott had non-severe physical impairments of bilateral cubital and carpal tunnel syndrome, essential tremor, low vision, hypertension, hyperlipidemia, gastroesophageal reflux disease, irritable bowel syndrome, and obesity. (Id. at 22-23, R. 21-22). The ALJ concluded that Scott's medically determinable mental impairments of major depressive disorder, moderate, recurrent, with anxious distress; anxiety; and post-traumatic stress disorder, considered singly and in combination, were nonsevere impairments. (Id. at 24, R. 23). Additionally, when

considering the "paragraph B" criteria, the ALJ found that Scott had no limitation in interacting with others but mild limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (Dkt. 12-2 at 24-29, R. 23-28).

At Step Three, the ALJ found that Scott's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. §§§ 404.1520(d), 404.1525, 404.1526. (Dkt. 12-2 at 30, R. 29).

After Step Three but before Step Four, the ALJ found that Scott had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c). (Dkt. 12-2 at 30-37, R. 29-36).

At Step Four, the ALJ concluded that Scott is capable of performing past relevant work as an Operating Engineer, medium exertion as generally performed, very heavy exertion as actually performed, skilled with an SVP of 6; and Truck Driver, Heavy, medium exertion as generally performed, very heavy exertion as actually performed, semi-skilled with an SVP of 4. (Dkt. 12-2 at 37-39, R. 36-38). The ALJ concluded that Scott was not disabled. (Id. at 39, R. 38).

## IV.  ANALYSIS

Scott challenges the ALJ's decision on two bases: (1) the ALJ erred by failing to recognize his obesity as a medically determinable impairment, and (2) the ALJ's

residual functional capacity assessment is not supported by substantial evidence.[2] (Dkt. 15 at 4).

## A. Obesity

Scott contends that the ALJ committed reversible error when he failed to recognize Plaintiff's obesity as a medically determinable impairment at Step Two and when he failed to consider it when assessing Scott's RFC. (Dkt. 15 at 5-7). In response, the Commissioner maintains that the ALJ found Plaintiff's obesity to be a non-severe impairment at Step Two, and accurately considered this impairment when factoring an appropriate RFC. (Dkt. 18 at 9-10).  In his reply, Scott concedes that the ALJ did find Plaintiff's obesity to be a non-severe, medically determinable impairment, at Step Two. (Dkt. 19 at 1). Scott continues to maintain, however, that remand is necessary because of the ALJ's failure to consider Plaintiff's obesity in crafting Scott's RFC. (Id. at 1-2).  This will be addressed in the next section.

At Step Two of the sequential process, ALJs are required to determine whether the claimant has an impairment or combination of impairments that are "severe." 20 C.F.R. § 404.1520(a)(4)(ii).[3] Here, as the Plaintiff concedes in his Reply

---

[2] Plaintiff's Opening Brief technically raises four issues for review. (Dkt. 15 at 4). Because Scott concedes his Step Two argument in the reply brief, the Court will address Scott's RFC arguments under one subheading.

[3] A severe impairment is one that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). When considering whether an impairment is severe, an ALJ is to consider whether the impairment significantly limits the claimant's physical or mental ability to do basic work activities, such as walking, standing, sitting, pushing, pulling, use of judgment, or dealing with changes in a routine work setting. 20 C.F.R. § 404.1522. Impairments are found to be "not severe" when the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered. SSR 85-28.

brief, the ALJ found Scott's obesity to be a non-severe, medically determinable impairment. (Dkt. 12-2 at 22-23, R. 21-22). Thus, the ALJ did not err at Step Two.

## B. Residual Functional Capacity

Scott's remaining arguments relate to the ALJ's residual functional capacity assessment. The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [his] impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). When determining the RFC, an ALJ "must consider all medically determinable impairments, physical and mental, even those that are not considered severe." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008). And, while an ALJ "must consider the entire record," the ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, it is the ALJ's role to resolve conflicts in the evidence and to formulate an appropriate RFC based on consideration of the entire record. *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995) (the determination of RFC "is an issue reserved for the [Commissioner]," based on "the entire record, including all relevant medical and nonmedical evidence" and "if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict."). The Court will address each of Scott's arguments in turn.

### 1. Obesity

Where a claimant suffers from obesity, the ALJ must consider the limiting effects of obesity with the claimant's underlying impairments when formulating the RFC. SSR 19-2p. As noted above, the ALJ found Scott's obesity to be a non-severe impairment. The ALJ failed, however, to explicitly address Scott's obesity impairment in the RFC. (Dkt. 12-2 at 30-37, R. 29-36). Scott maintains that the ALJ's failure to properly consider his obesity or to include limitations in the RFC warrants. (Dkt. 19 at 1-2).  Because Scott has failed to cite to any medical evidence demonstrating that his weight affected his ability to work, (Dkt. 15 at 5-7; Dkt. 19 at 1-3), the Court finds this error harmless.

Courts often find harmless error where the claimant fails to "specify how his obesity further impaired his ability to work." *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006) (affirming where the ALJ adopted the limitations suggested by the reviewing doctors, who were aware of the claimant's obesity); *see Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (holding that mere speculation about the impact of obesity is insufficient for remand); *Rennaker v. Saul*, 820 F. App'x. 474, 481 (7th Cir. 2020) (finding the ALJ's failure to consider claimant's obesity harmless were claimant failed to explain how her obesity hampered her ability to work).  Scott fails to point to any medical records to support his contention that his obesity required limitations in the RFC assessment or that it limited his ability to work. *Givens v. Colvin*, No. 4:12-cv-44-WGH-RLY, 2013 WL 1102754, at *4 (S.D. Ind. Mar. 15, 2013); *see also Clark v.*

*Kijakazi*, No. 20-CV-1363, 2021 WL 5905942, at *3 (E.D. Wis. Dec. 14, 2021)

(finding ALJ's error in failing to specifically address the effects of the claimant's

obesity on her mental limitations harmless where the claimant did not explain how

her obesity – in combination with either her physical or mental impairments –

impacted her ability to work); *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015)

("An ALJ's failure to explicitly consider an applicant's obesity is harmless if the

applicant did not explain how [his] obesity hampers [his] ability to work."). Scott did

not seek treatment for obesity or testify that obesity affects him in any way. Mere

speculation that obesity should or could have affected other impairments is not

enough. *Reid v. Berryhill*, No. 1:17-cv-02933-RLY-DLP, 2018 WL 3422128, at *4

(S.D. Ind. June 14, 2018), *R. & R. adopted,* No. 1:17-cv-02933-RLY-DLP, 2018 WL

3416621 (S.D. Ind. July 13, 2018). Because any consideration of obesity by the ALJ

would have been speculative, the Court finds remand to be inappropriate on this

issue.

     2.  *Ability to perform "medium work"*

     Next, Scott asserts that the ALJ failed to build an accurate and logical bridge

from the evidence to his conclusion when he determined that Scott had the residual

functional capacity to perform medium work. (Dkt. 15 at 8). Scott argues that the

ALJ never explains how he came up with assigning a "medium" RFC. (Id). The

Commissioner maintains that the ALJ sufficiently explained his RFC finding,

in accordance with SSR 96-8p. (Dkt. 18 at 7-8). The Commissioner also asserts that the ALJ's discussion of Plaintiff's medical records and the medical source opinions constitute substantial evidence supporting the finding that Scott could perform medium work. (Id.).

By finding that Scott had the residual functional capacity to perform medium work, (Dkt. 12-2 at 30, R. 29), the ALJ concluded that Scott could "[lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). In reaching this conclusion, the ALJ followed a two-step process. (Dkt. 12-2 at 30-31, R. 29-30). The ALJ first determined that Scott's impairments could reasonably be expected to cause Scott's alleged symptoms. (Id. at 30-32, R. 29-31). The ALJ then evaluated the intensity, persistence, and limiting effects of Scott's symptoms to determine the extent to which they limit Scott's work-related activities. (Id. at 31-32, R. 30-31).

In making this evaluation, the ALJ considered the statements by Scott and his wife that Scott could lift 50 pounds. (Dkt. 12-2 at 34, R. 33). The ALJ noted Scott consistently demonstrated normal gait, normal strength in bilateral upper and lower extremities, normal range of motion, and normal coordination. (Id. at 33-34, R. 32-33). The ALJ noted that in May 2018, Scott denied having limited use of his arms, hands, fingers, legs, feet, and toes; Scott also denied having neck and back problems. (Dkt. 12-2. at 33, R. 32). The ALJ pointed to Scott's consultative examinations with Dr. Soufi in which he had a steady and symmetric gait; did not use an assistive device; exhibited 5/5 muscle strength throughout his bilateral lower

extremities; was able to lift, carry and handle light objects; and exhibited grossly normal fine and gross manipulative abilities. (Dkt. 12-2. at 33, R. 32; Dkt. 12-7 at 56-58, 65-67, R. 371-73, 380-82). The ALJ also pointed to Scott's ability to rise from a sitting position without assistance; get up and down from the exam table with ease; squat and rise from that position with ease; walk on heels and toes with ease; no joint swelling, effusion, erythema, or deformity; his ability to stand and hop on one foot bilaterally; and his full range of motion. (Dkt. 12-2 at 33-34, R. 32-33; Dkt. 12-7 at 57-58, 66, R. 372-73, 381). The ALJ also considered Scott's and his wife's statements regarding Scott's activities of daily living, which included Scott walking his dogs, washing dishes, shopping, and his ability to perform some yardwork. (Dkt. 12-2 at 34, R. 33; Dkt. 12-6 at 19-21, 31-33, R. 223-25. 235-37; Dkt. 12-7 at 54, 63, 71, 98, R. 369, 378, 386, 413).

It is important to note that much of Scott's testimony at the hearing sharply contrasted with his early statements contained in the record limiting his subjective symptom reliability. *See Masters v. Astrue*, 818 F. Supp. 2d 1054, 1065 (N.D. Ill. Aug. 19, 2011) ("[A]n ALJ may reasonably disbelieve a claimant's testimony when, for example, it is contradicted by medical records or other medical evidence, by conduct inconsistent with the claim, by prior inconsistent statements, or other conduct or statements that tend to render the testimony doubtful."); *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (affirming the ALJ's credibility determination where the claimant's allegations conflicted with prior statements to medical providers). While acknowledging a range of daily activities in

13

his Social Security application paperwork, Scott testified at the disability hearing that he does not shop, wash dishes, or walk his dogs. (Dkt. 12-2 at 65, 67, R. 64, 66). The ALJ noted these inconsistencies in his opinion. (Dkt. 12-2 at 34-35, R. 33-34).

The ALJ then considered the medical opinions of the state agency consultants, the consultative examiners, and Scott's physician. (Dkt. 12-2 at 35-37, R. 34-36). The ALJ first considered the opinions of state agency medical consultants Dr. B. Whitley and Dr. J. Sands, who opined that Scott was capable of light work. (Dkt. 12-2 at 35, R. 34). The ALJ found these opinions less persuasive because the doctors failed to provide sufficient rationale for their postural limitations and the inconsistencies of the opinions with the evidence from other medical sources. (Id.). Scott does not contest this finding.  The ALJ found the opinions of Dr. Soufi most persuasive because Dr. Soufi's physical exam findings did not differ markedly from those from other providers. (Id. at 35-36, R. 34-35; Dkt. 12-7 at 52-59, 61-67; R. 367-74, 376-82). The ALJ also considered the post-operative limitations imposed by Dr. Terry Fenwick related to Scott's carpal tunnel surgery but found the opinion unpersuasive because the limitations were intended to be in place for only a few weeks, not a continuous period of 12 or more months. (Dkt. 12-7 at 36, R. 35).

In formulating Scott's RFC, the ALJ sufficiently weighed Scott's medical history, physicians' opinions, the effects of claimant's subjective symptoms, the statements made by Scott and his wife regarding his activities of daily living, and other record evidence, to build a logical bridge between the evidence and his

conclusion. The ALJ's determination that Scott's physical limitations limited him to performing the full range of medium work is supported by substantial evidence in the record, thus remand is not warranted on this issue.

### 3. *Need for Updated Medical Opinion*

Scott next argues that the ALJ erred in failing to obtain an updated medical expert opinion to review his October 2019 x-rays which demonstrated that he had "mild degenerative joint space loss in both knees" and "small right knee joint effusion." [4] (Dkt. 15 at 8-9). In response, the Commissioner contends that Scott has failed to demonstrate how these x-rays constituted new, significant evidence that reasonably could have changed the ALJ's decision. (Dkt. 18 at 11).

As Scott argues, Dr. Soufi, who examined the claimant in February and April 2019, did not review his bilateral knee x-rays taken on October 21, 2019. (Dkt. 12-7 at 104-05, R. 419-20). Because of this new medical evidence diagnosing "mild degenerative joint space loss in both knees," Scott maintains that the ALJ was required to submit the x-rays to medical scrutiny. (Dkt. 15 at 9). The Court disagrees.

"It is common for there to be a lag between the state agency physicians' reviews and the ALJ's decision, so the fact that new medical records came in after the state agency physicians conducted their reviews, is not, by itself problematic."

---

[4] "Joint effusion" refers to a swollen joint that happens when extra fluids flood the tissues around a person's joints. *Joint Effusion (Swollen Joint)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/symptoms/21908-joint-effusion#:~:text=What%20is%20joint%20effusion%3F,compared%20to%20your%20other%20joints (last visited Feb. 22, 2022).

*Shelia M. v. Saul,* No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021).
Instead, the dispositive question is whether there is evidence containing new,
significant medical diagnoses postdating the state agency examining physician's
opinion that reasonably could have changed the physician's opinion. *Stage v. Colvin*,
812 F.3d 1121, 1125 (7th Cir. 2016) (remanding where a later diagnostic report
contained "significant, new, and potentially decisive findings" that could
"reasonably change the reviewing physician's opinion"). Under those circumstances,
the ALJ should not rely on the outdated state agency assessment, but submit the
new evidence to medical scrutiny. *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir.
2018); *see also Kemplen v. Saul,* 844 F. App'x 883, 887 (7th Cir. 2021); *Keys v.
Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017); *Charles B. v. Saul*, 2:19-cv-00084-
JPH-DLP, 2020 WL 1163924, at *14 (S.D. Ind. Mar. 11, 2020) ("The Seventh Circuit
has repeatedly held that an ALJ may not 'play doctor' and interpret 'new and
potentially decisive medical evidence' without medical scrutiny.").

Here, there were no significant medical findings that the ALJ failed to
consider, nor was there any new and significant evidence that reasonably could
have changed Dr. Soufi's opinion. First, the ALJ's RFC determination suggests that
the ALJ was aware of Scott's October 2019 x-rays generated after Dr. Soufi's
consultative examinations. As the ALJ noted, Scott's primary care provider, Nurse
Practitioner Kathy Brinkman ordered Scott's X-rays, during his October 21, 2019
examination, in response to Scott's complaints about knee pain. (Dkt. 12-2 at 34, R.
33; Dkt. 12-7 at 92-93, R. 407-08). Ms. Brinkman's treatment notes documented

16

that she had reviewed and discussed the x-rays with Scott, found him to be stable and doing well, and advised Scott to remain as active and mobile as possible. (Dkt. 12-2 at 34, R. 33; Dkt. 12-7 at 93, R. 408). Next, the ALJ acknowledged Scott's December 4, 2019 visit with Nurse Practitioner Ann Vash for IBS. (Dkt. 12-2 at 34, R. 33; Dkt. 12-7 at 127-30, R. 442-45). Citing directly to Ms. Vash's evaluation, the ALJ noted that Scott had no joint pain, swelling, redness, or limited mobility; and on physical exam, normal range of motion in his extremities. (Dkt. 12-2 at 34, R. 33; 12-7 at 130, R. 445). Thus, contrary to the Plaintiff's contention, the ALJ did not impermissibly play doctor interpreting Scott's x-rays. Instead, the ALJ simply acknowledged the October 2019 x-rays and their findings. (Dkt. 12-2 at 34, R. 33).

Scott has failed to demonstrate how his October x-rays "changed the picture so much" that the ALJ erred by continuing to rely on Dr. Soufi's earlier assessment. *Kemplen v. Saul,* 844 F. App'x at 887 (citing *Stage v. Colvin,* 812 F.3d 1121, 1125 (7th Cir. 2016)). Scott's complaints regarding his knees were well documented in records and statements and known by the agency prior to the October 2019 x-rays. In his December 2018 Adult Function Report, which was reviewed by the agency, Scott stated that it was rough for him going up stairs because it hurt and that it was rough for him to get up from a squat. (Dkt. 12-6 at 35, R. 239; Dkt. 12-3 at 4, R. 80). Following this report, Scott presented to Dr. Soufi on February 9, 2019 for his consultation. The Plaintiff's musculoskeletal physical exam showed Scott was able to squat, rise from a sitting position without assistance, and get up and down from the exam table with ease. (Dkt. 12-7 at 57, R.

17

372). Dr. Scoufi also noted that Scott had a normal range of motion – bending and straightening – in both knees. (Dkt. 12-7 at 58, R. 373).

In support of the reconsideration of his disability application, on February 26, 2019, Scott informed the agency that he felt he could no longer do his job because it was painful for him to get in and out of the machines. (Dkt. 12-6 at 61, R. 265). Scott specifically noted in his March 2019 Adult Function Report, which was also reviewed by the agency, that he hurt when he knelt and struggled to get out of his bathtub. (Dkt. 12-6 at 66, 70, R. 270, 274). Following this, on April 27, 2019, Scott presented to Dr. Soufi for a second consultative examination. (Dkt. 12-7 at 61-67, R. 376-82). Scott's musculoskeletal physical exam revealed tenderness in the hands, elbows and ankles. (Dkt. 12-7 at 66, R. 381). Dr. Soufi noted that Scott was able to squat, rise from a sitting position, get up and down from the exam table with ease, and stand and hop on one foot bilaterally. (Id.). Dr. Scoufi also noted that Scott had a normal range of motion – bending and straightening – in both knees, and no joint swelling or effusion. (Id.). As noted above, Scott took bilateral x-rays of his knees in October 2019. After examining Scott and reviewing the x-rays, Scott's primary care provider, Ms. Brinkman did not identify any specific limitations in Scott's abilities. Here, the ALJ clearly reviewed, considered, and then discussed at length Scott's medical history, including his October 2019 x-rays. The Plaintiff has failed to present any significant medical findings that the ALJ failed to consider.

Moreover, Scott offers no explanation or argument of how his x-rays from October 2019 showing "mild degenerative joint space loss" and "small right knee

joint effusion," could have altered Dr. Soufi's opinion. Courts have generally not found new evidence showing only mild changes in a claimant's condition to be potentially decisive. *Shelia M. v. Saul*, No. 20 C 664, 2021 WL 1784775, at *6 (N.D. Ill. May 5, 2021); *see also Keys v. Berryhill*, 679 F. App'x 477, 481 (7th Cir. 2017) (finding that it was not error for the ALJ to rely on the opinions of the state agency doctors where the plaintiff did not explain how the findings on plaintiff's two spinal MRIs would have changed the doctors' opinions); *Natasha M. v. Saul*, No. 2:19-cv-002520JRS-DLP, 2020 WL 5640529, at *6-7 (S.D. Ind. Sept. 2, 2020) (finding that the consultant psychological assessments were not critically outdated relative to the completed record where the plaintiff failed to show that there was significant evidence that postdated the consultants' assessments); *Bond v. Berryhill*, No. 16 C 2018, 2017 WL 1398656, at *3 (N.D. Ill. Apr. 18, 2017) (finding that the ALJ did not need to get a medical opinion to interpret a CT scan showing mild degenerative changes).

Plaintiff has not established that his October 2019 x-rays "changed the picture" so much that the ALJ abused his discretion by failing to consult a medical expert before making an RFC determination. These x-rays show only mild changes to Scott's knees problems, which were issues documented at some level in the records provided to the state agency physicians. Further, Scott's own primary care provider, Ms. Brinkman, who reviewed the x-rays, failed to find that his knee pain  affected his functional limitations. *See Frank R. v. Kijakazi*, No. 19 CV 3223, 2021 WL 4264386, at *11 (N.D. Ill. Sept. 20, 2021) ("In these circumstances, where plaintiff cannot

show that his treaters themselves opined that the more recent medical evidence affected his work-related limitations, the Court finds that plaintiff has not shown that it was an abuse of the ALJ's discretion to evaluate plaintiff's knee impairment without requesting an updated medical opinion."). Because Scott failed to develop any argument of how these x-rays could have changed the state agency physicians' opinions, Scott is unable to demonstrate prejudice from the ALJ's decision to not submit these records for medical review. Accordingly, the Court finds the ALJ did not commit reversible error by declining to submit Scott's October 2019 x-rays for medical scrutiny.

4. *Paragraph B Criteria*

Finally, Plaintiff maintains that the ALJ failed to properly incorporate all of Scott's limitations in the RFC. (Dkt. 15 at 10-11). Specifically, the claimant argues that while the ALJ found mild limitations in three of the four Paragraph B criteria, there is no evidence that the ALJ included these limitations in the RFC. (Id.). In response, the Commissioner maintains that the ALJ sufficiently considered the combined effects of Plaintiff's impairments throughout the decision, including the RFC, and that the ALJ's consideration was supported by the record. (Dkt. 18 at 12-17).

The Seventh Circuit has held that an ALJ must consider a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Christina B. v. Kijakazi*, No. 1:20-cv-01936-DLP-JRS, 2022 WL 178606, at *2 (S.D. Ind. Jan. 20, 2022) (quoting *Villano v. Astrue*, 556

F.3d 558, 563 (7th Cir. 2009)). If, after consideration, the ALJ determines that a mild

limitation does "not merit a non-exertional limitation in the RFC, he is obligated to

explain that conclusion so that [the Court] can follow the basis of his reasoning."

*Muzzarelli v. Astrue*, No. 10 C 7570, 2011 WL 5873793, at *23 (N.D. Ill. Nov. 18, 2011)

(citing *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005)).

Here, at Step Two, the ALJ found that Scott had no more than mild limitations

in the first functional area of understanding, remembering, or applying information[5];

no limitations in the second functional area of interacting with others; no more than

mild limitations in the third functional area of concentrating, persisting, or

maintaining pace[6]; and no more than mild limitations in the fourth functional area of

adapting or managing oneself[7]. (Dkt. 12-2 at 24-29, R. 23-28). The ALJ, however,

imposed no non-exertional limitations in the RFC. (Dkt. 12-2 at 30, R. 29).

Reading the ALJ's opinion as a whole,[8] the Court finds the ALJ sufficiently

explained his reasoning for not including mental limitations in the RFC. At Step Two,

the ALJ noted Scott's assertion that he needed reminders to take his medication

---

[5] Understanding, remembering, or applying information refers to the ability to learn, recall, and use information to perform work activities. Examples include identifying and solving problems; following one- or two-step oral instructions to carry out a task; and sequencing multi-step activities. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(1).

[6] Concentrating, persisting, or maintaining pace refers to the ability to focus on work activities and stay on task at a sustained rate. Examples include initiating and performing a task and working at an appropriate and consistent pace. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(3).

[7] Adapting or managing oneself refers to the ability to regulate emotions, control behavior, and maintain well-being in a work setting. Examples include responding to demands, adapting to change; and maintaining personal hygiene. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(E)(4).

[8] "[I]t is proper to read the ALJ's decision as a whole." *Jenkins v. Saul*, No. 18 C 7031, 2020 WL 7771142, at *13 (N.D. Ill. Dec. 29, 2020) (citing *Rice v. Barnhart*, 384 F.3d 363, 370 n. 5 (7th Cir. 2004) ("[I]t would be a needless formality to have the ALJ repeat substantially similar factual analysis at both steps three and five.")).

and to go to appointments but did not need reminders for personal care; and that Scott handled stress "fair" but did not handle change well. (Dkt. 12-2 at 24, R. 23). The ALJ also acknowledged that Scott testified that he could pay attention for 10 minutes but that he did not finish what he starts. (Dkt. 12-2 at 24, 27, R. 23, 26).

During Scott's January and April 2019 psychological consultative examinations, the ALJ noted that the claimant was able to interpret proverbs, note similarities and differences, and perform simple calculations. (Dkt. 12-2 at 24-25, R. 23-24; Dkt. 12-7 at 46-49, 69-72, R. 361-64, 384-87). The examiner, Dr. Scott Duncan, found Scott's immediate, recent, and remote memory functions to be intact. (Id.). The reports also indicated that Scott was attentive and cooperative during the examination and that he exhibited a logical and sequential thought process. (Dkt. 12-7 at 46-49, 69-72, R. 361-64, 384-87). Dr. Duncan determined that Scott had adequate comprehension, memory, and complexity of endeavors. (Id.). The ALJ acknowledged that no ambulatory or behavioral concerns were noted, and Scott's hygiene and grooming were fairly meticulous. (Dkt. 12-2 at 28-29, R. 27-28). The ALJ also recognized that during Scott's physical consultative examinations, Scott's concentration was good. (Id. at 27, R. 26).

In the RFC assessment, the ALJ considered the opinions of reviewing psychological consultants, Dr. Amy S. Johnson and Dr. Kari Kennedy, and psychological consultative examiner, Dr. Duncan. The ALJ found the opinions of Drs. Johnson, Kennedy, and Duncan persuasive. (Dkt. 12-2 at 30, 36-37, R. 29, 35, 36). Drs. Johnson and Kennedy opined that Scott did not have any severe mental

impairments, and Dr. Duncan opined that Scott did not have any work-related limitations that would affect his ability to perform the mental demands of work-related activity. (Dkt. 12-2 at 36-37, R. 35-36). Scott has not challenged the ALJ's weighing of the state agency consultants' opinions, and thus the Court accepts the ALJ's finding. As support for finding these opinions persuasive, the ALJ summarized Scott's mental health treatment records noting that Scott had failed to offer many symptom allegations to his providers; engage in expansive mental health treatment; or to have been referred for dedicated outpatient treatment, crisis stabilization, or inpatient stays by his providers. (Id.). Through the development of the record and extensive analysis, the ALJ has built a logical bridge between the evidence and his decision to not include additional mental limitations in the RFC. Because substantial evidence supports the ALJ's decision, remand is not warranted.

## V. CONCLUSION

For the reasons detailed herein, this Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits. Final judgment will issue accordingly.

So ORDERED.

Date: 2/25/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email